## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDUARDO LAMBERTY,      :
     **Plaintiff**      :
         :      **No. 1:22-cv-01964**
     **v.**      :
         :      **(Judge Rambo)**
MR. NICKLOW, <u>et</u> <u>al.</u>,      :
     **Defendants**      :

## <u>MEMORANDUM</u>

<u>Pro se</u> Plaintiff Eduardo Lamberty ("Plaintiff"), a convicted and sentenced state prisoner who is currently incarcerated at State Correctional Institution Camp Hill ("SCI Camp Hill") in Camp Hill, Pennsylvania, commenced the above-captioned action by filing a complaint, followed by a supplemental complaint, pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting violations of his constitutional rights while incarcerated there. (Doc. Nos. 1, 12.) In accordance with the Prison Litigation Reform Act,[1] the Court conducted an initial review of Plaintiff's complaint and supplemental complaint (collectively, the complaint), and dismissed Plaintiff's complaint for failure to state a claim upon which relief could be granted, but without prejudice to Plaintiff filing an amended complaint. (Doc. Nos. 13, 14.) After Plaintiff filed his amended complaint (Doc. No. 15), the Court

---

[1] <u>See</u> The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

again conducted an initial review and dismissed Plaintiff's amended complaint for failure to comply with Rules 8 and 20 of the Federal Rules of Civil Procedure. (Doc. Nos. 18, 19.)  Plaintiff was granted a final opportunity to amend his pleading. Currently pending before the Court is Plaintiff's second amended complaint. (Doc. No. 20.)  For the reasons set forth below, the Court will dismiss the second amended complaint and direct the Clerk of Court to close this case.

## I.     BACKGROUND

On December 6, 2022, Plaintiff filed his Section 1983 complaint in the United States District Court for the Eastern District of Pennsylvania ("Eastern District"). (Doc. No. 1.)  On December 9, 2022, the Eastern District transferred Plaintiff's case to this District Court.  (Doc. No. 4 at 1 n.1 (explaining that: there was no apparent basis for venue in the Eastern District; the events giving rise to Plaintiff's claims occurred in the Middle District; and the defendants are located in the Middle District).)  After receiving the transfer order from the Eastern District, this Court issued two (2) Administrative Orders directing Plaintiff to either pay the requisite filing fee or file the appropriate financial documentation.  (Doc. Nos. 8, 10.)  On December 19, 2022, Plaintiff filed a motion for leave to proceed in forma pauperis, and, on January 3, 2023, Plaintiff filed his prisoner trust fund account statement. (Doc. Nos. 9, 11.)

### A.     Plaintiff's Original Complaint

Plaintiff filed his Section 1983 complaint against the following defendants, all of whom appeared to be employed by the Pennsylvania Department of Corrections and to have worked at SCI Camp Hill during the period of time relevant to Plaintiff's claims: (1) Mr. Nicklow ("Nicklow"), the superintendent; (2) Tonya Heist ("Heist"), the assistant to the superintendent and facility grievance coordinator; (3) Hannah Trostle ("Trostle"), the medical supervisor; (4) Sergeant Young ("Young"), a correctional officer; (5) Sergeant D. Johnson ("Johnson"), a correctional officer; and (6) Sergeant Misti, a correctional officer.  (Doc. Nos. 1 at 1, 2-4; 12 at 1.)

In his complaint, Plaintiff asserted that the events giving rise to his claims occurred while he was incarcerated at SCI Camp Hill.  (Doc. No. 1 at 6.)  Plaintiff, however, did not specify when these events occurred.  (Id.)  He alleged only that these events occurred "[t]hroughout [his] incarceration at SCI Camp Hill[.]"  (Id.)  In addition, Plaintiff claimed that "all Defendant's [sic] constantly harass and retaliate against [him] for filing grievances for all wrongs done against [him]."  (Id.)  And, specifically, Plaintiff claimed that he was "assaulted by Defendant's [sic] for filing grievances" and that he "receives misconducts for no rule infractions."  (Id.)  Plaintiff also claimed that he "suffers from sleep apnia [sic] and was never given a CPAP machine that [he] needs and was prescribed while outside before [his] incarceration."  (Id.)  Plaintiff further asserted that, because of his "sleep apnia[,]

[sic]" he "suffers from sleep deprivation[.]"  (Id.)  In connection with all of these allegations, Plaintiff appeared to assert violations of his rights under the First and Eighth Amendments to the United States Constitution, as well as a claim for harassment.[2]  (Id. at 5.)  As for relief, Plaintiff sought "[a] protection clause for the constant harassment and retaliation by Defendant's [sic]" as well as monetary damages.  (Id. at 6.)

By Memorandum and Order dated March 9, 2023, the Court granted Plaintiff leave to proceed in forma pauperis, deemed his complaint filed, and dismissed it for failure to state a claim upon which relief could be granted.  (Doc. Nos. 13, 14.)  More specifically, the Court concluded that there was a complete absence of allegations in the complaint that would give rise to a plausible inference that any of the named Defendants were personally involved in any asserted deprivation of Plaintiff's federally protected rights.  (Doc. No. 13 at 6–7.)  The Court further concluded that, without such allegations of personal involvement, liability could not be imposed against Defendants under Section 1983.  (Id. at 7.)

Additionally, the Court concluded that, because Plaintiff's complaint did not allege how Defendants were personally involved in committing a deprivation of Plaintiff's constitutional rights, the Court was left—and Defendants, if served,

---

[2]  Neither the legal nor factual basis of Plaintiff's harassment claim was set forth in his complaint.  (Doc. Nos. 1, 12.)

would also be left— to speculate as to what alleged conduct on their part gives rise to constitutional violations. (Id. at 7–8.) Accordingly, because Plaintiff's complaint did not provide fair notice of Plaintiff's claims and/or the grounds upon which those claims rested, the Court found that Plaintiff's complaint did not satisfy Rule 8 of the Federal Rules of Civil Procedure. (Id.)

Ultimately, however, the Court could not say that granting Plaintiff leave to amend his claims against Defendants would be futile and, thus, the Court granted Plaintiff leave to file an amended complaint within thirty (30) days in order to attempt to cure the deficiencies identified above. (Id. at 9–10.)  Plaintiff was instructed, inter alia, that his amended complaint must set forth his claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. (Id. at 10.) In addition, Plaintiff was cautioned that neither conclusory allegations nor broad allegations would set forth a cognizable claim. (Id.)

### B. Plaintiff's Amended Complaint

Plaintiff filed his amended Section 1983 complaint on March 30, 2023. (Doc. No. 15.)  Plaintiff set forth various encounters with, and perceived mistreatment by, Defendants Nicklow, Heist, Trostle, Johnson, and Sergeant Misiti ("Misiti"), a correctional officer at SCI Camp Hill.[3] (Id. at 4, ¶ 2.)  More specifically, Plaintiff's

---

[3]  Plaintiff named Defendant Misiti for the first time in the amended complaint. (Doc. No. 15.)  Additionally, Plaintiff did not appear to name or mention Defendant

amended complaint included eleven (11) numbered paragraphs, styled as the "Statement [o]f [t]he Case," which briefly described events and concerns that Plaintiff had concerning these five (5) Defendants.  (<u>Id.</u> at ¶¶ 1–11.)  Based upon these alleged events and concerns, Plaintiff claimed that all of the Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution.  (<u>Id.</u> at 6, ¶¶ 15–17.)  As for relief, Plaintiff sought declaratory and monetary relief.  (<u>Id.</u> at 7.)

By Memorandum and Order dated May 4, 2023, the Court dismissed Plaintiff's amended complaint for failure to comply with Rules 8 and 20 of the Federal Rules of Civil Procedure.  (Doc. Nos. 18, 19.)  As for Rule 8, the Court explained, <u>inter alia</u>, that most of the numbered paragraphs in the amended complaint contained nothing more than an abbreviated and disconnected summary of isolated events that allegedly occurred during an eleven (11) month period at SCI Camp Hill, concerning five (5) different employees. (Doc. No. 18 at 8–9.)  In addition, the Court explained that the amended complaint failed to identify the specific legal theories supporting each of the isolated events alleged therein and, instead, only asserted general claims against Defendants without tethering those general claims to any of the isolated incidents.  (<u>Id.</u> at 10.)  As for Rule 20, the Court explained, <u>inter alia</u>,

---

Young in the amended complaint.  (<u>Id.</u>)  Defendant Young was previously named as a Defendant in the complaint.  (Doc. Nos. 1, 12.)

that it was unable to discern a single claim in the amended complaint that properly connected all of the named Defendants. (<u>Id.</u> at 12 (explaining that there was no obvious connection between the various isolated incidents spanning from November of 2021 to October of 2022, concerning the alleged denial of his grievances, the alleged denial of his medical care, the alleged failure to protect him from (a) an assault by a fellow inmate and (b) the sexual advances made towards him by another inmate, as well as his allegedly stolen property")). Accordingly, the Court dismissed the amended complaint, but without prejudice to Plaintiff's final opportunity to amend his pleading. (Doc. No. 19 at 1.)

### C.    Plaintiff's Second Amended Complaint

Plaintiff filed his second amended Section 1983 complaint on May 26, 2023. (Doc. No. 20.) Named as Defendants are Johnson, Misiti, and Nicklow. (<u>Id.</u> at 1, 2–3, 5.) Plaintiff alleges that all of the events giving rise to his claims took place at SCI Camp Hill between October 8, 2022, and May 19, 2023, "with previous times of harassment prior with no definetve [sic] date." (<u>Id.</u> at 4.) In support of his second amended complaint, Plaintiff has submitted a document, titled "Statement [o]f Facts." (Doc. Nos. 21; 20 at 4 (containing the second amended complaint, wherein Plaintiff states: "Please See Attached (Statement of Facts)"). Plaintiff's "Statement [o]f Facts" sets forth nine (9) numbered paragraphs. (Doc. No. 21.) More specifically, Plaintiff alleges as follows.

On October 8, 2022, he "complained" to Defendant Johnson on the housing unit "about issues with cellmate." (Id. ¶ 1.) Plaintiff was told by Defendant Johnson to return to his cell, which, Plaintiff alleges, placed him in a "hostile situation." (Id. ¶ 2.) After entering his cell, "Plaintiff was assaulted by cellmate." (Id. ¶ 3.) On that same date, Plaintiff was falsely accused by Defendant Johnson of having contraband in his cell. (Id. ¶ 4 (asserting that Plaintiff "wasn't present and [his] cellmate was moving cells with the cell in disarray").) Plaintiff was then "restrained" by Defendant Johnson, who told him that he was being taken to the RHU for writing grievances on Defendant Misiti. (Id. ¶ 5.)

Thereafter, on October 16, 2022, Plaintiff wrote to Defendant Nicklow "about issues involving him not returning copies of property and inmate account forms." (Id. ¶ 6.) Two (2) days later, on October 18, 2022, Plaintiff spoke to the RHU sergeant about "property" and was told that "it never arrived and that he would make a phone call to find out." (Id. ¶ 7.) Plaintiff appears to allege that, later that day, his property "finally arrived to the RHU." (Id. ¶ 8.) "Plaintiff was told that the only contents in side [sic] was state[-]issued browns [and] legal material." (Id.) And, finally, on November 2, 2022, Plaintiff filed a grievance regarding his "missing property without property sheets due to [Defendant] Nicklow refusing to return them." (Id. ¶ 9.)

In connection with all of these allegations, Plaintiff claims that Defendant Johnson and Misiti violated his rights under the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution "by leaving Plaintiff['s] personal property unsecured and allowing items to be stolen, lost, or missing." (Doc. No. 20 at 5.) Plaintiff further claims that Defendant Nicklow violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution by "withholding documents that were needed to properly file grievances and access the courts." (Id.) As for relief, Plaintiff seeks to have "all items returned" or to be "reimbursed[,]" as well as "monetary damages for sentimental value items." (Id.)

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2), district courts are required to review complaints in civil actions where a litigant is proceeding in forma pauperis. See 28 U.S.C. § 1915(e)(2). If the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, then the district court must dismiss the complaint. See id. In dismissing claims under § 1915(e)(2), district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient

factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating the plausibility of a complaint, the Court is required to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint."   See Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010); Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017) (stating that the court "must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]" (citation and internal quotation marks omitted)).

Additionally, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se "is to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).

## III.   DISCUSSION

Plaintiff has filed his second amended complaint pursuant to the provisions of Section 1983, asserting violations of his constitutional rights.   (Doc. No. 20.) Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).   Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

Here, Plaintiff asserts violations of his First, Fourth, Fifth, and Fourteenth Amendment rights to the United States Constitution.  (Doc. No. 20 at 5.)  The Court addresses each of these asserted violations below.

### A.   Plaintiff's First Amendment Access-to-Courts Claim

In his second amended complaint, Plaintiff asserts a violation of his First Amendment rights based upon allegations that Defendant Nicklow denied him access to the courts when he withheld "documents[.]"  (Doc. No. 20 at 5.)  Under the First and Fourteenth Amendments to the United States Constitution, "prisoners retain a right of access to the courts."  See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)); see also Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 294 n.17 (3d Cir. 2018) (explaining that, typically, in the prisoner context, the right is "framed as a due process right" (citations omitted)).

Generally speaking, access-to-courts claims fall into two (2) categories: forward-looking claims and backward-looking claims.  See Christopher v. Harbury, 536 U.S. 403, 413–14 (2002).  Forward-looking claims seek relief from "systemic official action" that "frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time."  See id. at 413.  Thus, in these cases, the underlying cause of action "has not been lost for all time, . . . but only in the short term[,]" and the ultimate object of these sorts of access claims is to place the plaintiff in a position to pursue the underlying cause of action "once the frustrating condition has been removed."  See id.

Backward-looking claims seek relief for suits "that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." See id. at 413–14 (footnote omitted).  As a result, "[t]hese cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." See id. at 414 (footnote and internal footnote omitted). The ultimate object of these sorts of access claims is not a judgment in a separate suit, "but simply the judgment in the access claim itself[.]" See id.

In both types of access claims, the justification is the same: "to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." See id. at 414–15.  The United States Supreme Court's "cases rest on the recognition that the right is ancillary to the underlying [cause of action], without which a plaintiff cannot have suffered injury by being shut out of court." See id. at 415. Thus, in pursuing an access-to-courts claim, a plaintiff must point to an actual injury by "identify[ing] a nonfrivolous, arguable underlying [cause of action]" that is lost or that is being obstructed by the asserted denial of access to the courts. See id. (internal citation and quotation marks omitted). A plaintiff must also point to "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." See id.

13

Additionally, in the prison context, "the injury requirement is not satisfied by just any type of frustrated legal claim." See Lewis, 518 U.S. at 354.  Instead, only claims that involve "direct or collateral attacks on a prisoner's conviction or sentence, or civil rights suits challenging the conditions of his confinement—could support an access-to-courts injury."  See Rivera v. Monko, 37 F.4th 909, 921 (3d Cir. 2022) (citing Lewis, 518 U.S. at 355).  As explained by the United States Supreme Court, "[i]mpairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." See Lewis, 518 U.S. at 355 (emphasis in original).

Here, the Court finds that Plaintiff's second amended complaint does not sufficiently allege: any underlying cause of action, whether anticipated or lost; any specific conduct on the part of Defendant Nicklow that impeded such cause of action;[4] any articulated injury suffered by Plaintiff as a result of Defendant Nicklow's conduct;[5] or any remedy that could be awarded as recompense but not otherwise available in some suit that may yet be brought. See Christopher, 536 U.S. at 416 (explaining that, "[l]ike any other element of an access claim, the underlying

---

[4]  Plaintiff alleges that Defendant Nicklow withheld "documents[,]" (Doc. No. 20 at 5), but does not allege when Defendant Nicklow withheld those documents, what documents he withheld, or how those documents were relevant to a separate underlying cause of action.

[5]  Plaintiff asserts only that he was denied "access [to] the courts[,]" (Doc. No. 20 at 5), but not that he suffered any specific injury as a result thereof.

cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant" (citation omitted)); Monroe, 536 F.3d at 205–06 (explaining that when a prisoner asserts an access-to-courts claim, his "complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy'" in such a way that defendants are on fair notice of it (quoting Christopher, 536 U.S. at 416–17)). Accordingly, because Plaintiff's second amended complaint has failed to make this showing, the Court concludes that Plaintiff has not stated an access-to-courts claim upon which relief can be granted against Defendant Nicklow.  As such, this claim will be dismissed.

### B.     Plaintiff's First Amendment Retaliation Claim

In his second amended complaint, Plaintiff appears to assert that he suffered retaliation for engaging in conduct protected by the First Amendment.  (Doc. Nos. 20 at 5; 21 ¶ 5.)  In order to state a First Amendment retaliation claim, Plaintiff must show that: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him."  See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted).  However, even if Plaintiff states a prima facie case of retaliation, "prison officials may still prevail if they establish that "they would have made the same decision absent the protected

conduct for reasons reasonably related to a legitimate penological interest."  See id. (citation and internal quotation marks omitted).

Here, Plaintiff appears to assert his First Amendment retaliation claim against Defendant Johnson.  (Doc. No. 21 ¶ 5.)  More specifically, Plaintiff alleges that, when he was being restrained by Defendant Johnson on October 8, 2022, Defendant Johnson stated to him that he would be "taken to the RHU for writing grievances on [Defendant] Misiti." (Id.)  The Court, however, finds that Plaintiff has failed to state a First Amendment retaliation claim upon which relief can be granted.

The Court recognizes that the filing of lawsuits and prison grievances constitute activity protected by the First Amendment.  See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (reiterating its prior holding that a prisoner-plaintiff engages in constitutionally protected activity when he files a grievance against a prison official (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003))); Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (reiterating its prior holding "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts" (citation omitted)); Allah v. Seiverling, 229 F.3d 220, 223-25 (3d Cir. 2000) (concluding that the prisoner-plaintiff had stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials). In addition, the Court also recognizes

that transferring an inmate to the RHU constitutes an adverse action.  See id. at 225 (providing that a prisoner's transfer to administrative custody constitutes an adverse action).

Even when recognizing these legal principles, however, the Court still finds that Plaintiff's second amended complaint does not allege "a causal link" between Plaintiff engaging in such protected activity and the adverse actions that were allegedly taken against him by Defendant Johnson.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  In particular, the allegations against Defendant Johnson do not provide sufficient information about when Plaintiff filed grievances against Defendant Misiti or how long after he filed such grievances that the asserted retaliation occurred.  Thus, even when viewing the facts in the light most favorable to Plaintiff, he has failed to show that the filing of grievances was a substantial or motivating factor in the alleged retaliation. As a result, the Court concludes that Plaintiff's second amended complaint fails to state a First Amendment retaliation claim upon which relief can be granted.  The Court will, therefore, dismiss this claim.

C.      **Plaintiff's Fourth Amendment Claim**

In his second amended complaint, Plaintiff asserts a violation of his Fourth Amendment rights against Defendants Johnson and Misiti.  (Doc. No. 20 at 5.)  The Fourth Amendment, which applies to the States through the Fourteenth Amendment, see Bailey v. United States, 568 U.S. 186, 192 (2013), provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

See U.S. Const. amend. IV. Thus, there are two (2) clauses in the Fourth Amendment, one pertaining to "searches and seizures" and the other pertaining to "[w]arrants." See id.

Here, Plaintiff's second amended complaint appears to ground his Fourth Amendment claim against Defendants Johnson and Misiti based upon an alleged seizure of personal property in his cell. (Doc. No. 20 at 5.) The United States Supreme Court has already ruled, however, that prisoners have no legitimate expectation of privacy in their individual cells and, thus, the Fourth Amendment's prohibition on unreasonable searches does not apply in such cells. See Hudson v. Palmer, 468 U.S. 517, 525–26 (1984) (holding that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"); Parkell v. Danberg, 833 F.3d 313, 325 (3d Cir. 2016) (recognizing Hudson's holding as foreclosing a Fourth Amendment claim that arises from an unreasonable search of a prisoner's cell). Accordingly, to the extent that Plaintiff's second amended complaint asserts a Fourth Amendment claim against Defendants Johnson and Misiti

for the alleged seizure of personal property in his cell, the Court finds that this claim

fails to state a claim upon which relief can be granted.  As a result, this claim will be

dismissed.

### D.    Plaintiff's Fifth Amendment Claim

In his second amended complaint, Plaintiff asserts violations of his Fifth

Amendment rights against Defendants Johnson, Misiti, and Nicklow.  (Doc. No. 20

at 5.)  The Fifth Amendment provides, in pertinent part, that "[n]o person shall be

. . . deprived of life, liberty, or property, without due process of law[.]"  See U.S.

Const. amend. V.  The provisions of the Fifth Amendment only concern, however,

federal action, not state or private action.  See, e.g., Dusenbery v. United States, 534

U.S. 161, 167 (2002) (explaining that "[t]he Due Process Clause of the Fifth

Amendment prohibits the United States, as the Due Process Clause of the Fourteenth

Amendment prohibits the States, from depriving any person of property without 'due

process of law'"); Nguyen v. U.S. Cath. Conf., 719 F.2d 52, 54 (3d Cir. 1983)

(stating that "[t]he limitations of the [F]ifth [A]mendment restrict only federal

governmental action and not the actions of private entities" (citing Public Utilities

Commission v. Pollak, 343 U.S. 451, 461 (1952)); Nemeth v. Off. of Clerk of

Superior Ct. of New Jersey, 837 F. App'x 924, 929 n.5 (3d Cir. 2020) (unpublished)

(noting that the district court had properly concluded that, because all of the named

defendants were state and private officials and entities, the plaintiff could not pursue

a Fifth Amendment claim against any of them because the Fifth Amendment's due process clause only "protects against federal governmental actions, not state actions").

Here, Defendants Johnson, Misiti, and Nicklow are employees of the DOC who are alleged to have worked at SCI Camp Hill during the period of time relevant to Plaintiff's claims.   (Doc. No. 20.) These Defendants are, therefore, state employees, not federal employees. Thus, to the extent that Plaintiff's second amended complaint asserts a Fifth Amendment due process claim against these state-Defendants, the Court finds that this claim fails to state a claim upon which relief can be granted.  As a result, this claim will be dismissed.

### E.    Plaintiff's Eighth Amendment Claim

"The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Glossip v. Gross, 576 U.S. 863, 876 (2015).  In order "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" See Porter v. Pennsylvania Dep't of Corr.,

974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Regarding the first prong, life's necessities include food, clothing, shelter, medical care, and reasonable safety.  See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 418 (3d Cir. 2000) (stating that "when the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety" (citation omitted)).  Regarding the second prong, a prison official does not act with deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety"—that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (explaining that the official "must actually be aware of" the existence of the substantial risk and that "it is not sufficient that the official should have been aware" (citing Farmer, 511 U.S. at 837–38)).

While the Eighth Amendment requires prison officials to take reasonable measures "to protect prisoners from violence at the hands of other prisoners[,]" it is well-settled that not "every injury suffered by one prisoner at the hands of another . . .  translates into constitutional liability for prison officials responsible for the [victim-prisoner's] safety."  See Farmer, 511 U.S. at 833–34.

21

Here, Plaintiff's second amended sets forth the following allegations regarding the assault in his cell: on October 8, 2022, Plaintiff "complained" to Defendant Johnson "about issues with cellmate" (Doc. No. 21 ¶ 1); Plaintiff was told by Defendant Johnson to return to his cell, which, Plaintiff alleges, placed him in a "hostile situation" (id. ¶ 2); and, after entering his cell, "Plaintiff was assaulted by cellmate" (id. ¶ 3).

Having carefully reviewed these allegations, the Court finds that Plaintiff has failed to establish deliberate indifference on the part of Defendant Johnson. While Plaintiff's second amended complaint alleges that he complained to Defendant Johnson about "issues with [his] cellmate," (id. ¶ 1), Plaintiff has not set forth well-pleaded facts that Defendant Johnson knew of <u>and</u> disregarded an excessive risk to Plaintiff's health and/or safety.  For instance, Plaintiff does not: expand on the alleged "issues" he was having with his cellmate; whether or not, and to what extent, he explained these alleged "issues" to Defendant Johnson; or whether Defendant Johnson was aware of any other facts from which the inference could be drawn that a substantial risk of serious harm existed for Plaintiff <u>and</u>, further, that Defendant Johnson <u>actually</u> drew that inference.  <u>See</u> <u>Farmer</u>, 511 U.S. at 837. Rather, Plaintiff's allegations seem to suggest that, because he complained, Defendant Johnson should have known that an incident could occur.  Such a suggestion, without such well-pleaded facts, is inadequate to rise to an Eighth Amendment violation.

22

See Beers-Capitol, 256 F.3d at 133 (explaining that the official "must actually be aware of" the existence of the substantial risk and that "it is not sufficient that the official should have been aware" (citing Farmer, at 837–38)).  Accordingly, for all of these reasons, the Court concludes that Plaintiff's second amended complaint fails to state an Eighth Amendment claim upon which relief can be granted.  As such, this claim will be dismissed.

### F.      Plaintiff's Fourteenth Amendment Claim

In his second amended complaint, Plaintiff asserts a violation of his Fourteenth Amendment rights against Defendants Johnson, Misiti, and Nicklow based upon allegations that his property was allegedly stolen or lost at SCI Camp Hill without procedural due process of law.  (Doc. No. 20 at 5.)  The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]"  See U.S. Const. amend. XIV, § 1.  In order to determine whether procedural due process requirements apply, the Court must first consider whether the "property" interest asserted is one that is protected by the Fourteenth Amendment.   See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570–71 (1972) (stating that, in order "to determine whether due process requirements apply in the first place, [courts] must look not to the weight but to the nature of the interest at stake[,]" and thus, courts "must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property" (internal

citation and quotation marks omitted)).  The nature of the interest asserted here is that prison officials allegedly deprived Plaintiff of personal property that was in his cell.

It is well-established, however, that the negligent deprivation of property by a state official does not give rise to a cognizable due process claim.  See Daniels v. Williams, 474 U.S. 327, 328 (1986) (providing that the negligent acts of state officials causing unintentional loss of or injury to life, liberty, or property do not violate the Due Process Clause of the Fourteenth Amendment); Allen v. Cooper, 140 S. Ct. 994, 1004 (2020) (stating that "a merely negligent act does not 'deprive' a person of property" within the meaning of the Due Process Clause (citing Daniels, 474 U.S. at 328)); Johnson v. City of Philadelphia, 975 F.3d 394, 402 (3d Cir. 2020) (stating that "'the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property'" (quoting Daniels, 474 U.S. at 328) (emphasis in original)).

It is further established that the intentional deprivation of property by state officials also does not give rise to a cognizable due process claim if the plaintiff has an adequate post-deprivation remedy available under state law.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (providing that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if

a meaningful postdeprivation [sic] remedy for the loss is available"); <u>Allen</u>, 140 S.

Ct. at 1004 (explaining that a deprivation of property "must be intentional, or at least

reckless, to come within the reach of the Due Process Clause[,]" and that "[a] State

cannot violate that Clause unless it fails to offer an adequate remedy for [a

deprivation], because such a remedy itself satisfies the demand of 'due process'"

(citation and internal citation omitted)).

With respect to post-deprivation remedies in the prisoner context, the United

States Court of Appeals for the Third Circuit has held that the DOC's administrative

grievance system constitutes an adequate post-deprivation remedy. <u>See, e.g.</u>,

<u>Monroe</u>, 536 F.3d at 209–10 (finding that prison official-defendants who had

confiscated legal materials belonging to the prisoner-plaintiffs did not violate the

Due Process Clause, in part, because the DOC's grievance procedure provided an

adequate post-deprivation remedy); <u>Tillman</u>, 221 F.3d at 422 (finding that the

prisoner-plaintiff had an adequate post-deprivation remedy in the county

correctional facility's grievance program, thereby satisfying due process).

In addition to the DOC's grievance system providing an adequate post-

deprivation remedy, it has also been held that Pennsylvania tort law provides an

adequate remedy for prison officials' unlawful deprivation of inmate property. <u>See</u>

42 Pa. Cons. Stat. Ann. § 8522(a), (b)(3) (waiving sovereign immunity for negligent

acts related to the "care, custody or control of personal property in the possession or

control of Commonwealth parties . . ."); <u>Mayo v. Hollibaugh</u>, No. 18-cv-1492, 2020 WL 1467257, at *6 (M.D. Pa. Mar. 26, 2020) (explaining that even if the prison's grievance procedures "were constitutionally inadequate, [the prisoner-plaintiff] could take advantage of state tort law which may serve as an adequate post-deprivation remedy" (citing 42 Pa. Cons. Stat. Ann. § 8522(a), (b)(3))); <u>Hernandez v. Corr. Emergency Response Team</u>, 771 F. App'x 143, 145 (3d Cir. 2019) (unpublished) (explaining that "[e]ven if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would [still] provide an adequate remedy" (citing 42 Pa. Cons. Stat. Ann. § 8522(b)(3))).

Applying these principles here, the Court finds that, to the extent Plaintiff's second amended complaint claims that Defendants Johnson, Misiti, and Nicklow negligently deprived him of his personal property, Plaintiff's allegations do not give rise to a cognizable Fourteenth Amendment due process claim. <u>See Daniels</u>, 474 U.S. at 328; <u>Allen</u>, 140 S. Ct. at 1004; <u>Johnson</u>, 975 F.3d at 402. Additionally, the Court finds that, to the extent Plaintiff's second amended complaint claims that Defendants Johnson, Misiti, and Nicklow intentionally deprived him of his property, Plaintiff's allegations do not give rise to a cognizable due process claim because Plaintiff acknowledges that he filed a grievance at SCI Camp Hill (Doc. No. 21 ¶ 9) and, thus, he had an adequate post-deprivation remedy available to him. <u>See Hudson</u>, 468 U.S. at 533; <u>Monroe</u>, 536 F.3d at 209–10; <u>Tillman</u>, 221 F.3d at 422.

Accordingly, the Court concludes that Plaintiff's second amended complaint fails to state a Fourteenth Amendment claim upon which relief can be granted. As a result, this claim will be dismissed.

### G.   Leave to Amend

The final issue is whether Plaintiff should be granted leave to amend his second amended complaint. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id. The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

27

In accordance with this standard, the Court finds that granting Plaintiff any further leave to amend his claims against Defendants would be futile, as Plaintiff was previously granted two (2) opportunities to amend his pleading and has been unable to state a claim upon which relief can be granted.  <u>See</u> (Doc. No. 19 at 1 (containing the Court's May 4, 2023 Order, wherein Plaintiff was granted "a **<u>final</u>** opportunity to amend his pleading . . . " (emphasis in original)).)

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's second amended complaint (Doc. No. 20) for failure to state a claim upon which relief can be granted. An appropriate Order follows.

Dated: July 19, 2023                              <u>s/ Sylvia H. Rambo</u>
                                                  SYLVIA H. RAMBO
                                                  United States District Judge

28